# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher Carney, having first been duly sworn according to law, hereby depose and say:

## INTRODUCTION

1. I am an Akron Police Officer and been so employed since February 1997. On July 30, 2026, I received special deputation as a task force officer by the United States Postal Inspection Service to investigate crimes related to drug trafficking. I received training in detection and investigation of drug trafficking offenses involving the use of the mail and other courier services. I have worked narcotic investigations involving drug related offenses since 2003. These investigations have led to the prosecution of multiple cases in U.S. District Court as well as state courts. I am empowered by law to conduct investigations of, and to make arrests for, offenses related to the United States Postal Service (USPS) and the mails, as authorized by Title 18, U.S.C., Section 3061 (see also 39 U.S.C. §§ 401, 404, and 411.

2. Based upon the above experience, I am familiar with the modus operandi of persons involved in illicit distribution of controlled substances as well as the terminology used by persons involved in the illicit distribution of controlled substances. I am aware that persons involved in the illicit distribution of controlled substances routinely attempt to conceal their identities as well as the locations at which drug transactions occur. These people are also known to have vehicles, properties, utilities and other items purchased in the names of others in order to conceal the association of drug activities with financial transactions. I know that individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they distribute these drugs. I also know that individuals engaged in drug trafficking commonly possess and use firearms to protect their illegal drugs and proceeds from customers, competitors, rivals, and would-be robbers.

3. This affidavit is submitted in support of a criminal complaint against Ismael Camacho (hereinafter "CAMACHO"). Because this affidavit is submitted for the limited purpose of supporting a criminal complaint, I have not included every fact known concerning this investigation. I have set forth only the facts I believe necessary to establish probable cause that CAMACHO committed violations of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), Attempted Possession With Intent to Distribute Cocaine; and a violation of 18 U.S.C. § 922(g)(1), Being a Felon in Possession of a Firearm.

FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

4. On October 28, 2026, United States Postal Inspection Service ("USPIS") Postal Inspectors interdicted Cleveland Field Office identified USPS Priority Mail parcel bearing tracking number 9505 5140 2156 6294 1605 40 addressed to Caroline Coen *** Pike St., Alliance, OH 44601 and bearing the return address of Rosemary Buell **** Jaboneria Rd., Bell Garden, CA 90201 (hereinafter the "Subject Parcel"). USPIS previously identified the Subject Parcel as a suspect drug parcel based on several characteristics including, but not limited to, type of mail, origin, destination, and size. According to USPS databases, the Subject Parcel was mailed on October 21, 2026, from Downey, CA 90241.

5. On October 28, I took possession of the Subject Parcel at the USPS facility in Akron, Ohio, and transported it to the USPIS Cleveland Field Office for further investigation. Later that day, the Subject Parcel was placed into a lineup containing several blank parcels which emanated no narcotics odors. Narcotics detection canine "Bella," handled by me, was allowed to examine the lineup. Bella gave a positive alert to the Subject Parcel and did not give a positive

alert on the blank parcels. This positive alert meant Bella detected the odor of an illegal drug emanating from the Subject Parcel.[1]

6. On October 28, 2026, the Honorable James E. Grimes, U.S. Magistrate Judge, signed a federal search warrant authorizing the search of the Subject Parcel. We executed the search warrant by opening the Subject Parcel, discovered approximately 2,150 grams (gross total weight) of white, powdery substance that field-tested positive for cocaine, a Schedule II controlled substance. I know based on my training and experience that the weight, and packaging of this cocaine indicated it was intended for further distribution in the Northern District of Ohio.

7. On October 30, 2026, the Honorable James E. Grimes, U.S. Magistrate judge, signed an anticipatory residential search warrant for *** Pike St., ahead of a controlled delivery. The warrant authorized the entry and searching of *** Pike St. if (1) The acceptance of the **Subject Parcel** from the USPS or USPIS employee, and (2) the taking of either of the **Subject Parcel** into the residence at Target Premises, or any vehicle(s) or outbuilding(s) located at 956 Pike St., Alliance, OH 44601. Agents with the Federal Bureau of Investigation (FBI) assisting with the investigation provided me with information about potential individuals associated with the target address. They identified three potential individuals (1 male, 2 female) connected to the address in Ohio law enforcement databases, including CAMACHO.

---

[1] I have been state-certified as a narcotics canine handler since 2003, and I have worked with narcotics detection canine Bella since July 2020. Canine Bella and I completed 240 hours of a state certified training program at Excel K-9 Services, Inc., in Hiram, Ohio, under Certified Master Trainer Paul Shaughnessy of the North American Police Work Dog Association (NAPWDA), a nationally organized police work dog association which provides training for dogs and handlers. Canine Bella and I were certified in July 2020 by the Ohio Peace Officers Training Academy (OPOTA). Canine Bella has been trained to detect the presence of the odors of the following controlled substances: marijuana, cocaine, heroin, methamphetamine (“crystal meth”), and/or their derivatives.

8. On November 2, 2026, investigators and agents from the USPIS, FBI, Drug Enforcement Administration, Homeland Security Investigations, and Alliance Police Department conducted a controlled delivery of the Subject Parcel. Prior to the operation, investigators removed the suspected cocaine from the Subject Parcel and replaced it with a non-controlled, sham substance to mimic the weight and feel of cocaine in the Subject Parcel. Investigators also placed into the Subject Parcel electronic monitoring equipment designed to track the parcel's location (GPS) and to alert to the parcel's opening.

9. At approximately 11:00 AM, an undercover Postal Inspector delivered the Subject Parcel to its delivery address at *** Pike St. in Alliance, OH. A few minutes later, an unidentified male matching the description and photo of CAMACHO opened the front door of *** Pike St. He exited the house, stood on the front porch, looked at the Subject Parcel, appeared to kick the box, and appeared to use a cell phone to take a picture of it. He returned to the house, leaving the Subject Parcel on the porch. The Subject Parcel remained there for approximately 2 hours. During that time, an Amazon delivery vehicle dropped another parcel onto the porch of *** Pike St.

10. At approximately 1:12 PM, CAMACHO opened the front door of *** Pike St. He gathered both the Subject Parcel and Amazon parcel, and entered the house. Less than a minute later, CAMACHO exited the back door of the house, carrying only the Subject Parcel, and entered a white Ford Explorer, Ohio license plate no. JNP7529, parked on the property in the driveway. A short time later, the GPS inside the Subject Parcel alerted me to movement. CAMACHO immediately pulled out of the driveway and began driving away from the residence. At this time, officer operating a drone with video capabilities watched the Explorer drive away. Meanwhile, agents and investigators began moving in vehicles to follow CAMACHO. The drone maintained video surveillance until agents were able to see the Ford Explorer to follow it farther.

11. CAMACHO began driving at a high rate of speed while agents sought to catch up and initiate a traffic stop. Agents in pursuit saw the Ford Explorer pull off the road at the intersection of South Range Rd. and Oyster Rd. in Alliance, Ohio. The Explorer veered into the shoulder of the northwest corner of the intersection while traveling eastbound on South Range Rd. The Explorer then turned onto Oyster Rd. and headed north.

12. Approximately a mile and half farther down Oyster Rd., CAMACHO pulled up into an intersection. Once he came to a stop, agents boxed in the Explorer to prevent him from escaping. CAMACHO was ordered to exit the vehicle, and he eventually complied. CAMACHO was arrested, placed into the back of a law enforcement vehicle, and transported to Alliance Police Department. No other people were in the vehicle besides CAMACHO. Because no other individuals could drive the Explorer, law enforcement, pursuant to an Alliance Police policy, cleared the vehicle to ensure no weapons were inside, moved the vehicle to Alliance Police Department, and conducted an inventory search. Inside the Ford Explorer, law enforcement found three cellular phones. These phones were placed into airplane mode to prevent the potential destruction of evidence. No packages were in the vehicle.

13. Law enforcement began searching for the Subject Parcel. Based on officer observations of the Explorer veering off the road at the intersection of South Range Rd. and Oyster Rd. (in the path of travel), and based on my review of GPS information that pinged near that location, I headed to that intersection, which is approximately 2.2 miles from *** Pike St. Near the side of the road, in the northwest corner, I saw a white unopened package. For a vehicle traveling east on South Range Rd., then turning north onto Oyster Rd. as CAMACHO did in the Explorer, this corner would be on the driver's side. Upon further inspection, I determined it was the Subject Parcel. The package was not opened and had new writing on it, "Return to Sender,"

in black sharpie. A later search of the house at *** Pike St. revealed a black sharpie marker in the mailbox near where the Subject Parcel was retrieved by CAMACHO.

14. A few minutes after I retrieved the Subject Parcel, FBI executed the anticipatory search warrant at *** Pike St. Inside the house was Tkazijah Saunders and her daughter, a minor. Both individuals were brought out of the house while FBI agents cleared it. Inside they found a firearm, described further as an FN Five-seveN, black 5.7 caliber semiautomatic pistol, serial number 386389997, in a box above the refrigerator in the kitchen. I spoke with an agent at the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who stated that FN Five-seveN pistols are made in Belgium and imported into the United States through South Carolina. Based on this information, and the fact that the firearm is stamped with "Columbia, SC," I believe this firearm was not manufactured in Ohio and must have traveled in interstate commerce to be found in Ohio.

15. I interviewed Saunders and read her Miranda rights, after which she agreed to speak further with me. She stated that she lives at *** Pike St., which she rents. She stated that CAMACHO is her boyfriend, and although he sometimes stays at her house, he is not a permanent resident there. She stated that CAMACHO owned the gun and that he brought it to her house approximately 2 months ago. After being told that the Subject Parcel originally contained cocaine, she stated she was unaware of the package and its contents. She stated that she deleted her text messages with CAMACHO, but provided access to her two phones by giving law enforcement the pin numbers and signing a written consent to search.

16. I then traveled to Alliance Police Department to speak with CAMACHO. I read him his Miranda rights, and he stated that he wanted to speak to a lawyer before making any further statements. I stated that a firearm was found at *** Pike St., and noted that Saunders has a prior conviction that prohibits her possession of a firearm. I informed CAMACHO that our goal was to remove Saunders from the investigation if she was not involved. CAMACHO then stated, "It's

my gun. And look, that's all I'm going to say before I talk to a lawyer. She ain't got nothing to do with nothing."

17. CAMACHO has a prior conviction of conspiracy to distribute and possess with intent to distribute cocaine and heroin in the United States District Court for the Northern District of Ohio, case no. 4:07-CR-00603. CAMACHO was sentenced on or about July 14, 2009, to a term of 180 months imprisonment,[2] and therefore knows he was convicted of a crime punishable by a term of imprisonment greater than one year. Because of this prior felony, he is prohibited from possessing firearms or ammunition.

CONCLUSION

18. Based upon the information contained in this affidavit, I submit there is probable cause to believe that on or about November 2, 2026, in the Northern District of Ohio, Ismael CAMACHO committed violations of violations of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), Attempted Possession With Intent to Distribute Cocaine; and a violation of 18 U.S.C. § 922(g)(1), Being a Felon in Possession of a Firearm.

Christopher Carney
CHRISTOPHER CARNEY
U.S. POSTAL INSPECTOR TFO

On November 3rd, 2026, this affidavit was sworn to by the affiant, who did no more than attest to its contents pursuant to Crim. R. 4.1(b)(2)(A), by telephone after a PDF was transmitted by email, per Crim R. 4.1

Carmen Henderson
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

[2] On June 11, 2015, CAMCHO's sentence was reduced by the Court to 147 months.